IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Brunswick Division

| | |
|---|---|
| IN RE: ) | Chapter 11 Case |
| ) | Number 06-20146 |
| 440 KINGS WAY, LLC, ) | |
| ) | |
| Debtor. ) | |
| ) | |
| O'QUINN FAMILY PARTNERSHIP, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | |
| ) | |
| 440 KINGS WAY, LLC, ) | |
| ) | |
| Respondent. ) | |

### MEMORANDUM OPINION AND ORDER ON MOTION TO DETERMINE APPLICABILITY OF AUTOMATIC STAY

O'Quinn Family Partnership ("O'Quinn") filed this motion seeking to lift the stay of 11 U.S.C § 362 in order to proceed with state court remedies to evict the Debtor from O'Quinn's real property; or in the alternative, seeking a determination as to whether the stay of 11 U.S.C. § 362 applies to protect the Debtor from such eviction. These matters are core proceedings under 28 U.S.C. § 157(b)(2)(G).

AO 72A
(Rev. 8/82)

O'Quinn contends that an executory contract exists between O'Quinn and 440 Kings Way, LLC, the Debtor in Possession ("DIP"), and therefore, the DIP is obligated to surrender possession of the property because the DIP failed to assume the contract within the 120-day period provided for by 11 U.S.C. § 365(d)(4).[1] Alternatively, O'Quinn asserts that no executory contract exists, and argues that the DIP is an unauthorized sub-tenant with no legal right to continue on the property.

Because the DIP is an authorized sub-tenant and not O'Quinn's lessee, 11 U.S.C. § 365(d)(4) does not apply to the relationship between O'Quinn and the DIP. O'Quinn's motion is **DENIED**.

### Findings of Fact

O'Quinn owns a restaurant building located at 440 Kings Way, Saint Simons Island, Georgia ("Property"). On March 20, 2000, O'Quinn entered into a 20-year commercial lease

---

[1] 11 U.S.C. § 365(d)(4) provides:

> (A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of -
> (i) the date that is 120 days after the date of the order for relief; or
> (ii) the date of the entry of an order confirming a plan.

contract with St. Simons Restaurant Enterprises, Inc. ("SSREI"); the lease contract provided that a tenant was not allowed to assign the lease or sublease the Property without prior written consent from O'Quinn. On the same day, SSREI pledged its leasehold interest as collateral on a Deed to Secure Debt ("Security Deed") to Sapelo National Bank ("Sapelo"). In connection with the loan, O'Quinn signed a document titled "Consent of Lessor" which gave consent to the assignment of the leasehold interest by SSREI to Sapelo and also authorized Sapelo to sublease its interest in the event Sapelo took possession of the Property.

SSREI defaulted under the terms of the Security Deed and Sapelo foreclosed on SSREI's interest on November 2, 2004. Upon foreclosure, Sapelo purchased the leasehold and became tenant of the Property. Sapelo then subleased the premises to the DIP. The DIP subleased its interest to Blanche's Restaurant, LLC ("Blanche"), which operated the premises as a restaurant until September 2005.

Purportedly, Blanche had to discontinue operations because the roof leaked. Blanche vacated the premises and was released from its sublease by the DIP. On September 14, 2005, upon being notified that the roof needed to be replaced, O'Quinn notified Sapelo that it was in default

under the terms of the lease and filed a dispossessory warrant in the Superior Court of Glynn County, Georgia, naming as defendants Sapelo, the DIP, and Blanche.

The DIP filed this Chapter 11 petition on March 20, 2006. O'Quinn dismissed the DIP and Blanche as defendants in the dispossessory action, leaving Sapelo as sole defendant. In order to pursue a remedy in state court against the DIP, O'Quinn filed this motion seeking relief from the automatic stay.

## Conclusions of Law

O'Quinn asserts that an executory contract relationship exists between O'Quinn and the DIP, and the DIP's failure to assume the contract within the 120 days subsequent to filing for bankruptcy renders the lease rejected by operation of law pursuant to § 365(d)(4). Citing Block v. Brown, 404 S.E.2d 288 (Ga. Ct. App. 1991), O'Quinn first argues that if Sapelo rightfully subleased to the DIP, the DIP, under Georgia law, is in privity with O'Quinn, the landlord; and based on that relationship, the DIP had an affirmative obligation to surrender the property to O'Quinn on the 121st day following the filing of the bankruptcy petition. O'Quinn's second argument is that the DIP is an unauthorized sub-tenant to which O'Quinn has implicitly consented,

4

establishing privity between O'Quinn and the DIP. In the alternative, O'Quinn argues that the DIP is an unauthorized sub-tenant which has not been consented to, a trespasser that has no legal right to occupy the Property.

The DIP maintains that it is a consented-to sub-tenant with an executory contract relationship with Sapelo, not O'Quinn; and because its lessor, Sapelo, has knowingly, willingly, intentionally, and consensually waived its rights to the applicability of § 365(d)(4), the sublease still exists and the DIP has no obligation to surrender the Property to O'Quinn.

## I. Application of 11 U.S.C. § 356 (d)(4)

Section 365(d)(4)(A) in pertinent part provides:

> an unexpired lease of nonresidential real property under which the *debtor is the lessee* shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the *lessor*.

(emphasis added). Pursuant to § 365 (d)(4), a trustee or debtor in possession must bring a formal motion to assume or reject an unexpired lease of non-residential real property within 120 days following the filing of a petition for relief under the Bankruptcy Code. "Approval of the court is required to assume or reject a lease." In re Austin, 102

B.R. 897 (Bankr. S.D. Ga. 1989)(Dalis, J.)(citing to In re Florida Airlines, Inc., 73 B.R. 64 (Bankr. M.D. Fla 1987); In re D'Lites of America, Inc., 86 B.R. 299 (Bankr. N.D. Ga. 1988)). When the trustee or debtor in possession fails to seek the court's approval within the time period set forth in § 365, the lease agreement is deemed rejected by operation of law. Austin, 102 B.R. at 899.

However, in certain circumstances the lessor may waive its right to have the lease rejected by operation of law, and "may be estopped from efforts to dispossess a [debtor-lessee] if a waiver has occurred." Austin, 102 B.R. at 901. Because § 365 (d)(4) was designed for the benefit of the lessor,

> [t]he lessor may waive its right to have a lease rejected if, through its conduct, it evidences an intention to have the lease treated as continuing.

Id. (quoting In re Southern Motel Associates, 81 B.R. 112 (Bankr. M.D. Fla. 1987).

In determining whether waiver of §365(d)(4) has occurred, the question of which party is lessor to the debtor-lessee must first be resolved. Because the terms "lessor" and "lessee" are nowhere defined in the Bankruptcy

Code we must look to state law.[2] Under Georgia law, when there is consent from the landlord to sublease a rented property, a sub-tenant becomes the lessee of the original tenant; "the sub-tenant does not become the tenant of the owner, and the owner cannot proceed against [the sub-tenant] for rent." Garbutt & Donovan v. Barksdale-Pruitt Junk Co., 139 S.E. 357, 358 (Ga. Ct. App. 1927).

Alternatively, when an original tenant subleases the premises without the consent of the landlord, the landlord may elect to substitute the new unauthorized sub-tenant for the original tenant, thus establishing privity and making the unauthorized sub-tenant the landlord's lessee and not tenant of the original tenant. Id. At 358.

In this case, based on the limited evidence submitted, I find that Sapelo did have prior written consent to sublease the property. The Consent of Lessor document signed by O'Quinn in connection with the loan from Sapelo to

---

2   In the absence of a controlling federal rule, we generally assume that Congress has left the determination of property rights in the assets of a bankrupt's estate to state law, since such property interests are created and defined by state law.

Nobelman v. Am. Sav. Bank, 508 U.S. 324 (1993)(quoting Butner v. United States, 440 U.S. 48 (1979))(internal punctuation omitted).

SSREI contains a clause that states "I (we) do further agree that Sapelo shall have the right and privilege of subleasing its interest under the lease in the event Sapelo takes possession of the lease premises." (Debtor Ex. 1.)

O'Quinn argues that the Consent of Lessor was no longer valid after the foreclosure sale because it was executed with the Security Deed and, like the Security Deed, lost all effect upon the debt being satisfied. However, no evidence was submitted to suggest that the Consent of Lessor merged with the Security Deed. Furthermore, the document expressly addresses the rights of Sapelo following a default of the Security Deed and explicitly gives Sapelo prior written consent to sublease the Property.

Sapelo's purchase of the leasehold interest at the foreclosure sale created a landlord tenant relationship between O'Quinn and Sapelo, in which Sapelo was the lessee and O'Quinn the lessor. Because Sapelo had prior consent from O'Quinn to sublease the property, Sapelo's sublease to the DIP created a landlord tenant relationship between Sapelo and the DIP, with the DIP as lessee and Sapelo as lessor. The consented-to sublease did not alter the original relationship between O'Quinn and Sapelo, nor did it create an executory relationship between the DIP and

O'Quinn. The DIP did not become O'Quinn's lessee; therefore § 365(d)(4) does not apply to the relationship between O'Quinn and the DIP. As the DIP's lessor, Sapelo may waive its right to have the lease rejected and has stated that it chooses to do so; thus, the sublease is still in existence.

## II. § 362 (d)(1) - relief from stay "for cause"

O'Quinn also asserts pursuant to 11 U.S.C. § 362(d)(1)[3] a "for cause" basis for relief contending that the DIP owns no interest in the Property either because the DIP never had a valid lease or as a result of the lease being rejected pursuant to §365(d)(4).

> When a party in interest alleges "for cause" grounds for relief from stay, the debtor bears the burden of proof by a preponderance of the evidence that "cause" does not exist.

First Nationwide Mortgage Corp. v. Davis (In re Davis), Chapter 13 case No. 97-11093 (Bankr. S.D. Ga. 1998)(Dalis, J.). The DIP has proven by a preponderance of the evidence that the DIP does have a valid leasehold interest in the

---

[3] 11 U.S.C. § 362(d)(1) in pertinent part states:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

Property and that its lessor, Sapelo, has elected to waive its right to have the lease rejected by operation of law.

Based on the foregoing, the sublease between Sapelo and the DIP was a valid sublease authorized by O'Quinn; because Sapelo chooses not to enforce § 365(d)(4) and dispossess the debtor-lessee, the DIP's failure to assume the lease within the 120-day period does not obligate the DIP to surrender the Property to O'Quinn.

### Order

It is therefore **ORDERED** that O'Quinn's motion for relief from the automatic stay of 11 U.S.C. § 362 is **DENIED**.

JOHN S. DALIS
UNITED STATES BANKRUPTCY JUDGE

Dated at Brunswick, Georgia
this 26th day of February, 2007.